UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RONALD HARDING,                          :
          Plaintiff,                 :
                           :
v.                                       :            NO. 3:08-CV-00956 (DJS)
                           :
TOWN OF GREENWICH,                       :
          Defendant.               :

MEMORANDUM OF DECISION AND ORDER

The plaintiff, Ronald Harding ("Harding"), brings this action against the defendant, the Town of Greenwich ("Town"), alleging employment-related discrimination based on his race and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (a) (1).  Jurisdiction exists under 28 U.S.C. § 1331.  The defendant now moves for summary judgment pursuant to Fed. R. Civ. P.  56.  For the following reasons, the defendant's motion for summary judgment (doc. # 91) is GRANTED.

BACKGROUND

The plaintiff is an African American and a resident of the state of Connecticut.  In 1991 the defendant hired the plaintiff for the position of laborer.  Around 2002, the plaintiff's title was changed to Park Gardner I, the lowest salary grade Park Gardner position. In 2006, he was promoted to Park Gardner II. On several occasions, the plaintiff applied unsuccessfully for a tree climber position with the Town.  At the same time he was employed by the Town, the plaintiff owned and operated a gardening business called Cottage Gardens that sometimes trims trees.

I.        FACTS

In 1989 the plaintiff applied for a job as a tree climber in the Greenwich Parks and Recreation Department. Although the plaintiff passed the written and performance examinations for the tree climber position, the job was given to a white man who, in accordance with the

provisions of the governing collective bargaining agreement, had preference as a current town employee and union member. In 1997 the plaintiff again applied for a tree climber position. On the day the written examination was to be administered, the plaintiff was advised that applicants were required to have a commercial driver's license in order to be eligible to take the examination. The plaintiff did not have a commercial driver's license at that time and was told to leave the examination area. According to the plaintiff, the past practice of the defendant was to allow applicants who were already members of the collective bargaining unit six months after being hired to obtain a commercial driver's license.

On December 27, 2001, the plaintiff once again applied for a tree climber position with the defendant, but his written examination score eliminated him from further consideration. After the person to whom the tree climber position was offered relocated, the defendant reposted the position on July 26, 2002.  The defendant tested the applicants and ranked the plaintiff fourth on the 2002 tree climber eligibility list. The defendant hired the third ranked candidate, who was a more senior union member than the plaintiff. Although the plaintiff contends that the hired candidate "had a hard time climbing the tree," (doc. # 91-3, at 16), time was not a measure of performance and the plaintiff scored lower than the hired candidate on the performance scores.

Upset over the 2002 hiring decision, the plaintiff spoke with Ms. Mary Jo Iannuccilli, the defendant's Assistant Director of Human Resources, who, according to the plaintiff, assured him that another tree climber was about to retire and that he would be hired for that position once it became available. As a result of that assurance, the plaintiff did not pursue a grievance or file a discrimination charge with the Commission on Human Rights and Opportunities for the State of Connecticut ("CHRO") or with the United States Equal Employment Opportunity Commission ("EEOC").

The eligibility list for tree climber, a promotional list to determine who would be hired if there were an opening, remains in effect for one year after it is posted.  The applicable collective bargaining agreement provided that "[a]ny promotional list established by the Town shall remain in effect for a period of one year from the date established." (Doc. # 91-12, at 116, ¶ 11). At his deposition, the plaintiff agreed that the tree climber eligibility list established in 2002 expired on September 19, 2003. (Doc. # 91-3, at 16). After working in the tree division temporarily, the plaintiff, the most senior person remaining on the 2002 eligibility list, thought that the defendant should have automatically awarded him a tree climber position when one of the tree climbers retired on October 31, 2003.  Instead, the defendant did not post the tree climber vacancy until July 9, 2004. By that time, the defendant had transferred the plaintiff back to his old job and the 2002 eligibility list had expired.  The union filed no grievance on behalf of the plaintiff with respect to the expiration of the 2002 eligibility list for tree climber.  Further, the union made no request to extend the 2002 eligibility list for tree climber.

In connection with the July 9, 2004 posting, Mr. Bruce Spaman, Superintendent of Trees and Parks/Tree Warden, changed the job description for tree climber.  He submitted the proposed modifications to the tree climber job description to the union for review, and the union accepted the proposed changes.  The plaintiff subsequently spoke with Ms. Kelly Houston, the former Affirmative Action Officer for the defendant, who looked into the status of the plaintiff's application and reported back to him that he needed to add more experience to the application, as the plaintiff would not be qualified under the new job description without adding more job history.  Ms. Houston resubmitted the plaintiff's revised application on July 22, 2004.

To advance to the eligibility list, an applicant must pass both the written and performance examinations.  After taking and passing a written exam for the tree climber opening, the plaintiff

took the performance exam for tree climber on September 13, 2004. In a letter dated September 27, 2004, the defendant informed the plaintiff that his performance examination score "was not sufficient enough to place you among those candidates eligible for further consideration." (Doc. # 91-19, at 1).

After requesting and receiving all information pertinent to the testing, the plaintiff disputed the results of his performance examination and claimed that he had achieved a passing score. The performance examination consisted of three sections: tree identification, knot tying, and timing.  As to the tree identification section, the plaintiff received partial credit for identifying trees generally, e.g., oak, ash, etc., but did not identify with any greater specificity. According to the plaintiff, his identification of trees in this examination was consistent with what he had done in previous examinations. Although the defendant claimed that the plaintiff tied four of five knots incorrectly, the plaintiff maintains that he tied four of the five knots correctly. Finally, while the defendant's records indicated that the plaintiff did not complete his climb within the allotted time of forty minutes, the plaintiff kept time with his own watch and contends that he completed the climb in thirty-six minutes.

On October 1, 2004, Ms. Iannuccilli and the plaintiff met to discuss the plaintiff's concerns with the performance examination. To investigate the plaintiff's claims regarding the knot tying score on the performance test, on or about October 5, 2004, Ms. Iannuccilli interviewed the four people present at the time of the plaintiff's performance examination. After concluding that "there are issues surrounding one of the components of the Tree Climber Performance examination which may have compromised the integrity of the examination," (doc. # 91-27, at 1), Ms. Iannuccilli advised the Director of Parks and Recreation that the tree climber eligibility list had been invalidated and that all candidates who had passed the written

4

examination would be invited to retake the performance examination once it had been rescheduled.  She further noted that the "assessor for the retest will need to be an . . . expert outside the Town of Greenwich." (*Id.*)  The plaintiff filed a Municipal Grievance regarding his performance examination score on October 14, 2004, and amended it on October 22, 2004.

Before the performance examination could be readministered by an outside testing company, a number of steps had to be taken, including contacting a vendor, discussing the particulars of the test and its cost, and obtaining insurance certificates, as well as a waiver of certain insurance by the defendant's Comptroller. In early December 2004 an outside vendor, ArborMaster Training, Inc., forwarded a proposed contract to Ms. Iannuccilli pursuant to which it would be conducting a "Climber Performance Exam" for the defendant. (Doc. # 91-28, at 5). The original date proposed for the examination was December  2004; that proposed date was subsequently changed to April 2005. Throughout the month of January 2005 there were ongoing communications to and from the defendant concerning such matters relating to the administration of the performance examination as insurance certificates and insurance waivers.

The Greenwich Board of Estimate and Taxation ("BET") administers the defendant's financial affairs. In the latter part of 2004, the BET indicated to all of the defendant's Department Heads, including the Director of Parks and Recreation, that multiple positions were to be eliminated on a townwide basis in order to achieve a lower budget target. In early 2005, the defendant's First Selectman requested that the Director of Parks and Recreation eliminate three positions within his department. In response, the Director recommended the elimination of the vacant Tree Climber position, a vacant Maintenance Mechanic position, and a Custodian I position which was about to be vacated due to a retirement. There were no other vacant positions

in the Parks and Recreation Department to eliminate. By eliminating vacant positions, the Director of Parks and Recreation reduced positions without laying off any active employees.

Before the readministration of the performance examination was scheduled to occur, Ms. Iannuccilli was advised that the Tree Climber position was being eliminated from the Town's budget. The outside testing was thereafter cancelled and no one was appointed to the Tree Climber position that had been posted in 2004.

On July 26, 2005, the defendant filed a complaint with the CHRO.  In 2006 the defendant promoted the plaintiff to Park Gardner II.

## DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  On a motion for summary judgment, the Court must therefore "determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010).   A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

In making these determinations, "the court should review all of the evidence in the record." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).  In doing so, "the court must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence." Id. Nonetheless, "the mere existence of

6

a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. Lunts v. Rochester City School District, 12-1655-cv, 2013 U.S. App. LEXIS 5437, at *3 (2d Cir. March 20, 2013) (internal quotation marks omitted). "It is insufficient to rely on conclusory allegations or unsubstantiated speculation to defeat a motion for summary judgment." Id. (internal quotation marks omitted).

B.      TIMELINESS OF PLAINTIFF'S CLAIMS

        Pursuant to 42 U.S.C. § 2000e-5(e), a Title VII charge must be filed "within three hundred days after the alleged unlawful employment practice occurred . . . ."[1] "Simply put § 2000e-5(e)(1) . . . has the consequence of limiting liability because filing a timely charge is a prerequisite to having an actionable claim." AMTRAK v. Morgan, 536 U.S. 101, 120 (2002). "[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period - - 180 or 300 days - - set forth in 42 U.S.C. § 2000e-5(e)(1)." Id. at 122.

        "[U]nder Morgan, every failure to promote [or hire] is a discrete act that potentially gives rise to a freestanding Title VII claim with its own filing deadline.  Discrete acts of this sort, which fall outside the limitation period cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." Chin v. Port Authority of N.Y. & N.J., 685 F.3d 135, 157 (2d Cir. 2012).  Each discrete act of non-hiring therefore needs to have a timely filed charge in order for the complaining party to have an actionable claim.  At the same time, however, if "one alleged adverse employment action . . . occurred within the applicable filing period[,] . . . evidence of an earlier alleged

---

[1] This time period applies to cases such as this in which the aggrieved person "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . ." 42 U.S.C. § 2000e-5(e)(1)

retaliatory act may constitute relevant background evidence in support of [that] timely claim." Id. at 150 (internal quotation marks omitted).

Although the plaintiff has referenced a number of applications he submitted seeking a tree climber position dating back to 1989, he did not initiate a proceeding with the CHRO until July 26, 2005. The defendant argues that any claim relating to a failure to offer the plaintiff a tree climber position prior to September 30, 2004 (300 days before July 26, 2005) is time barred. For his part, the plaintiff "does not dispute that discrete acts of discrimination prior to September 28, 2004[2] are time-barred . . . ." (Doc. # 106, at 20).  Consequently, any claim relating to an act of non-hiring that occurred prior to late September 2004 is time barred. Such acts could, however, constitute relevant background evidence in support of a timely claim.

By the end of September 2004, the plaintiff had taken the performance examination relating to the July 9, 2004 tree climber position posting and had been advised by the defendant that he had not passed that examination. He met with Ms. Iannuccilli on October 1, 2004, to discuss his concerns with the performance examination. As a result,  Ms. Iannuccilli subsequently advised the Director of Parks and Recreation that the tree climber eligibility list had been invalidated and that the performance examination would be readministered by an outside vendor. The tree climber position in question was thereafter eliminated and the performance examination was not given.

The Court finds that discrete acts prior to September 2004, such as the defendant's failure to automatically place the plaintiff in the position which became vacant upon the retirement of a tree climber in October 2003, or the posting of the tree climber position in July 2004, are time barred. With respect to the plaintiff's allegations concerning the performance

---

[2] The Court finds the difference in the parties' calculations of the 300 day period (September 28, 2004 versus September 30, 2004) to be inconsequential for the purposes of the plaintiff's claims.

examination and related events occurring thereafter, however, the Court finds that these were "ongoing circumstances that combine[d] to form a single [alleged] violation" within the prescribed limitations period. Deters v. City of Poughkeepsie, 150 F. App'x 10, 12 (2d Cir. 2005).

C.     PLAINTIFF'S TITLE VII RACE AND COLOR CLAIMS

Title VII states, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, [or] color . . . ." 42 U.S.C. § 2000e-2 (a) (1). "A [Title VII] plaintiff must first establish a *prima facie* case; the employer may then come forward with a legitimate, non-discriminatory reason for the adverse action; the plaintiff then has an opportunity to produce evidence and carry the burden of persuasion that the proffered reason is a pretext and that the real reason for the adverse action was the plaintiff's membership in a protected class." Holland v. Conn., No. 3:10cv1156 (MRK), 2012 U.S. Dist. LEXIS 88314, at *6 (D. Conn. June 26, 2012) (citing Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010)).

"In order to make out a prima facie case of discrimination in violation of Title VII, a plaintiff has the burden of establishing that : (1) he is a member of a protected class; (2) he . . . was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination." Orlando v. DOT, 459 F. App'x 8, 9 (2d Cir. 2012) (citing  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  "[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis."  Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

"The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "If the employer articulates such a reason, the plaintiff is given an opportunity to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (internal quotation marks omitted).

The McDonnell Douglas framework allows the plaintiff to present evidence of an adverse action that creates an inference of discrimination, but does not sidestep a lawful reason to not hire an applicant, such as a lack of an opening. See Int'l Bd. of Teamsters v. U.S., 431 U.S. 324, 358 n.44 (1977) (inference of discrimination may be created if legitimate reasons, such as the absence of a vacancy in the job sought, are absent). "A materially adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." Piela v. State of Conn. Dep't of Corr., No. 3:10cv749 (MRK), 2012 U.S. Dis. LEXIS 59148, at *17 (D. Conn. April 26, 2012) (internal quotation marks omitted). "Although [the McDonnell Douglas framework] is a flexible standard, a plaintiff cannot establish a *prima facie* case if he cannot show that there was an available position." Duffy v. Lowe's Home Centers, Inc., 414 F. Supp. 2d 1133, 1143 (M.D.Fla. 2006). In Duffy, the court concluded that the plaintiff could not establish a prima facie case of discrimination on the basis of an application for a position that was never filled. Id. at 1144.

The Court finds that as to the plaintiff's timely claims relating to the July 9, 2004 tree climber posting, the plaintiff cannot establish a prima facie case of discrimination. "There is no evidence that [the defendant] subsequently filled the . . . position with anyone . . . [or] continued

to seek applicants, and thereby continued to overlook [the plaintiff] as a candidate. Absent such evidence, [the plaintiff] cannot state a *prima face* case of discrimination, and thus [the defendant] is entitled to summary judgment . . . ." Id.  Although the plaintiff initially was told he had failed the performance examination, the eligibility list resulting from that test was invalidated after the plaintiff complained about his performance scores. He was one of the applicants eligible to retake the performance examination that was to be administered by an outside vendor. However, the opening was eliminated before the plaintiff or anyone else took the second performance examination. To the extent the plaintiff could be considered to have been "rejected" for the tree climber position, all other applicants were equally rejected and the employer did not continue to seek applicants, as all applicants had their testing canceled.  As applied to the McDonnell Douglas framework, these facts do not create a prima facie case.

Even if the Court had concluded to the contrary that the defendant's cessation of the testing and hiring process for a tree climber position constituted "a deprivation of . . . an opportunity" that could be considered an adverse employment action, Piela, 2012 U.S. Dis. LEXIS 59148, at *17 (internal quotation marks omitted), the Court nonetheless would have found that the plaintiff failed to establish a prima facie case of discrimination. The final element of the prima facie case is the showing by the plaintiff that the adverse employment action "occurred under circumstances giving rise to an inference of discriminatory intent." Id. at *16. "[E]ven where an employer's intent is at issue, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment. [A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at *14-15 (internal quotation marks and citation omitted).

In support of his claim that the defendant decided to eliminate a tree climber position so that it wouldn't have to offer the position to him, the defendant has referred to various actions occurring prior to September 2004 as relevant background evidence. The Court finds much of this evidence unpersuasive, e.g., the defendant's failure to offer the plaintiff a tree climber position in 1989 when it offered the position to an individual who had preference in accordance with the governing provisions of the collective bargaining agreement, and some of it inadmissible, e.g., the plaintiff's statement that a co-worker had told him prior to the July 2004 job posting "that he had been told that a black person would never be allowed to work permanently in the tree division." (Doc. # 107-2, at 6, ¶ 41).

Even if the Court considers acts prior to September 2004 as background evidence in support of the plaintiff's timely claim, the plaintiff "has failed to offer admissible evidence that would permit a reasonable jury to find that [the defendant's elimination of the tree climber position in 2005] was related to [those previous acts]." Macbain v. Smiley Bros., Inc., 1:10-CV-1561 (LEK/DRH), 2013 U.S. Dist. LEXIS 21803, at *42 (N.D.N.Y. Feb. 19, 2013). As pointed out by the defendant, the defendant's decision to invalidate the 2004 tree climber eligibility list worked to the advantage of the plaintiff, who had been notified that he had failed the performance examination, and to the disadvantage of the white applicants who had been notified that they had passed the examination. The defendant has provided evidence of activity relating to the process of deciding to invalidate the 2004 tree climber eligibility list and readministering the performance examination, including entering into an agreement with an outside vendor who would oversee the test, obtaining necessary insurance certificates and waivers, and scheduling the examination, that continued from October 2004 through January 2005. The plaintiff has

presented no evidence that any of these activities could give rise to an inference of discriminatory intent.

The defendant has also provided evidence that the decision to eliminate the tree climber position in February 2005, along with the elimination of two other positions in the defendant's Parks and Recreation Department, was made in response to a request by the defendant's First Selectman that the Director of Parks and Recreation eliminate three positions within his department as part of a townwide effort to achieve a lower budget target. Additional evidence indicates that the three positions eliminated were vacant or soon to be vacant positions and that there were no other vacant positions within the Parks and Recreation Department. By eliminating these three positions, the Director of Parks and Recreation was able to avoid laying off any active employee. Again the plaintiff has provided nothing beyond speculation and conjecture to counter this evidence[3] and thereby establish that the elimination of the tree climber position "occurred under circumstances giving rise to an inference of discrimination." Orlando, 459 F. App'x at 9.  Since "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (internal quotation marks omitted), this is an additional reason why the plaintiff has failed to establish a prima facie case of discrimination and the defendant is entitled to summary judgment.

CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (**doc. # 91**) is

---

[3] The plaintiff has made an additional argument that the defendant did not in fact realize cost savings as a result of eliminating the tree climber position, which, according to the plaintiff, demonstrates that the reason provided by the defendant was a pretext for racial discrimination. The Court finds the plaintiff's argument in this respect to be too vague and tangential to support  a finding by a reasonable jury that the defendant's elimination of the tree climber position "occurred under circumstances giving rise to an inference of discrimination." Orlando, 459 F. App'x at 9.

**GRANTED**.  The Clerk is directed to close the case.

So ORDERED  this  4th     day of  June,      2013.

_____/s/ DJS_____
                    Dominic J. Squatrito
                    United States District Judge